UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-14043-GAO

KALIKA, LLC, and RICHARD L. KALIKA,
Plaintiffs,

v.

BOSTON & MAINE CORPORATION, PAN AM RAILWAYS, INC., PUBLIC SERVICE OF
NEW HAMPSHIRE, ROGER D BERGERON, ROBERT B. BURNS, R. MATTHEW CAIRNS,
ESQ., HANNAH K. IRVING, HUTTON N. SNOW, JOHN DOES 1–10, JANE DOES 1–10,
and DOES 1–10,
Defendants.

ORDER ON REPORT AND RECOMMENDATION
March 20, 2019

O'TOOLE, D.J.

The magistrate judge to whom this case was referred has issued a report and recommendation ("R&R") (dkt. no. 65) regarding pending motions to dismiss (dkt. nos. 40, 41, and 46).

The plaintiffs[1] have timely filed an objection to the R&R (dkt. no. 70), raising two arguments: that the plaintiffs did not agree to dismiss their claims against defendants Cairns and Irving with prejudice (directed to dkt. no. 41), and that magistrate judge erred in finding that this Court lacked authority to exercise personal jurisdiction over defendants PSNH and Snow (directed to dkt. no. 46).

Having reviewed the parties' submissions and the objected-to matters *de novo*, I concur with and accordingly ADOPT the R&R in its entirety. The motions to dismiss by the B&M

---

[1] The plaintiffs are Richard L. Kalika and his limited liability company, Kalika, LLC. While it is possible to read the objection as being made only on Mr. Kalika's behalf, I assume it is made on behalf of both plaintiffs.

defendants and defendants PSNH and Snow (dkt. nos. 40 and 46) are GRANTED. Because defendants Cairns and Irving were dismissed with prejudice by explicit agreement stated on the record at the motion hearing, their motion to dismiss (dkt. no. 41) is MOOT.

This action DISMISSED with prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>United States District Judge

RICHARD L. KALIKA and
KALIKA, LLC,
     Plaintiffs,


     v.                                    CIVIL ACTION NO.
                                         15-14043-GAO

BOSTON & MAINE CORPORATION,
PAN AM RAILWAYS, INC.,
PUBLIC SERVICE OF NEW HAMPSHIRE,
ROGER D. BERGERON, ROBERT B. BURNS, ESQ.,
R. MATTHEW CAIRNS, ESQ.,
HANNAH K. IRVING, HUTTON N. SNOW,
JOHN DOES 1-10, JANE DOES 1-10,
and DOES 1-10,
     Defendants.

**REPORT AND RECOMMENDATION RE:**
**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
**(DOCKET ENTRY # 40); DEFENDANTS' MOTION TO DISMISS FOR FAILURE**
**TO STATE A CLAIM AND MOTION TO DISMISS FOR LACK OF JURISDICTION**
**(DOCKET ENTRY # 41); DEFENDANTS' MOTION TO DISMISS**
**(DOCKET ENTRY # 46)**

**February 28, 2018**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion to dismiss the

amended complaint filed by defendants Boston & Maine Corporation

("B&M"), Pan Am Railways, Inc. ("PAR"), Roger D. Bergeron

("Bergeron"), and Robert B. Burns, Esq. ("Burns") (collectively:

"B&M defendants") under Fed. R. Civ. P. 12(b)(6) ("Rule

12(b)(6)").  (Docket Entry # 40).  Defendants Public Service of

New Hampshire ("PSNH"), R. Matthew Cairns, Esq. ("Cairns"),

Hannah K. Irving ("Irving"), and Hutton N. Snow ("Snow") move to

dismiss the amended complaint under Rule 12(b)(6) and Fed. R. Civ. P. 12(b)(2) ("Rule 12(b)(2)") for lack of personal jurisdiction. (Docket Entry ## 40, 41, 46). In addition, the B&M defendants, PSNH, Cairns, Irving, and Snow ("defendants") seek a dismissal based on collateral estoppel and the statute of limitations. (Docket Entry ## 41, 46). Plaintiff Richard L. Kalika ("Richard Kalika"), who is proceeding pro se, and plaintiff Kalika, LLC ("Kalika") (collectively: "plaintiffs") oppose the motions. (Docket Entry # 53). After conducting a hearing on January 12, 2018, this court took the motions (Docket Entry ## 40, 41, 46) under advisement.

<u>PROCEDURAL HISTORY</u>

This matter arises from the parties' efforts to establish certain rights regarding a crossing over railroad tracks owned by B&M and located in Merrimack, New Hampshire. (Docket Entry # 8, ¶¶ 2, 18). Richard Kalika is the sole owner of Kalika. (Docket Entry # 8, ¶ 17). Kalika, in turn, owns land in Merrimack that abuts B&M land and it purportedly acquired certain rights to the crossing. (Docket Entry # 8, ¶¶ 16, 56). The amended complaint outlines the parties' long, litigious history over the crossing in the New Hampshire state courts and how defendants have "repeatedly and intentionally interfered" with plaintiffs' rights to access Kalika's land via the crossing. (Docket Entry # 8, ¶ 2). The amended complaint

further alleges that defendants conspired through a "pattern of racketeering" and "purposeful misrepresentations" regarding B&M's compliance with a conditional settlement agreement ("the settlement agreement") in order to obtain releases signed by Kalika with respect to the crossing in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 ("section 1962"). (Docket Entry # 8).

At the January 12, 2018 motion hearing, the parties orally agreed to dismiss Cairns and Irving from this action. (Docket Entry # 64). They also agreed to dismiss all of the counts in the amended complaint except for Count Nine. (Docket Entry # 64). Captioned as a violation of 18 U.S.C. § 1962(d) ("section 1962(d)"), Count Nine sets out a RICO conspiracy claim. (Docket Entry # 8, pp. 34-35). Defendants move to dismiss Count Nine on the basis that there is no private right of action under RICO's criminal statutes. (Docket Entry # 40-1, pp. 6-7) (Docket Entry # 42, pp. 11-13) (Docket Entry # 47, pp. 6-7). They correctly maintain that "a private citizen has no authority to initiate a federal criminal prosecution." Cok v. Consentino, 876 F.2d 1, 2 (1st Cir. 1989) ("only United States as prosecutor" has authority to bring a claim "under RICO, 18 U.S.C. §§ 1961-1963"); see also Cichocki v. Massachusetts Bay Community College, Civil Action No. 12-10728-GAO, 2013 WL 783068, at *10

(D. Mass. Feb. 28, 2013) (18 U.S.C. § 1512 does not provide a private cause of action).

At the hearing and in their opposition, however, plaintiffs contend they are not bringing a private cause of action under the criminal RICO statute. Rather, the cited criminal statutes in the amended complaint provide the requisite predicate acts for a civil RICO claim under 18 U.S.C. 1964(c) ("section 1964") based on an unlawful section 1962(d) conspiracy. (Docket Entry # 53, pp. 5-6). In light of Richard Kalika's pro se status, this court construes the cited criminal statutes as setting out predicate acts for a section 1964(c) civil RICO claim in Count Nine.

## STANDARDS OF REVIEW

A. Rule 12(b)(2) Motion to Dismiss

When reviewing a motion to dismiss for lack of personal jurisdiction, the court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." Phillips v. Prairie Eye Center, 530 F.3d 22, 24 (1st Cir. 2008). There are three competing standards of review in this circuit when analyzing a motion to dismiss for lack of personal jurisdiction. See World Depot Corp. v. Onofri, Civil Action No. 16-12439-FDS, 2017 WL 6003052, at *7 (D. Mass. Dec. 4, 2017). "The most conventional" and more frequently employed standard is known as "the prima facie

method." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d 42, 50 (1st Cir. 2002); accord Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995). The prima facie method or standard allows the court "'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Foster-Miller v. Babcock & Wilcox Canada, 46 F.3d at 145 (quoting Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992)).

It is also well settled "that plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction," Boit, 967 F.2d at 675, and the plaintiff "is obliged to adduce evidence of specific facts." Foster-Miller, Inc., 46 F.3d at 145. "Thus, allegations in a [plaintiff's] brief or legal memorandum are insufficient," Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001), while an affidavit in support of the pleadings would be sufficient. See Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995) (drawing facts from pleadings and supplementary filings, including affidavits). "[I]n evaluating whether the prima facie standard has been satisfied, 'the district court is not acting as a fact finder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" United States v. Swiss Am. Bank, Ltd., 274 F.3d 610,

619 (1st Cir. 2001) (quoting United Elec. Radio & Mach. Workers
of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir.
1993)).

The second standard may appropriately be invoked when a
court determines that:

> In the circumstances of a particular case it is unfair to
> force an out-of-state defendant to incur the expense and
> burden of a trial on the merits in the local forum without
> first requiring more of the plaintiff than a *prima facie*
> showing of facts essential to in personam jurisdiction.  A
> court may so determine, for example, when the proffered
> evidence is conflicting and the record is rife with
> contradictions or when a plaintiff's affidavits are
> "patently incredible[.]"

Boit, 967 F.2d at 676 (internal citations omitted).  Under this
standard, "the court is to embark on a fact finding mission in
the traditional way, taking evidence and measuring the
plaintiff's jurisdictional showing against a preponderance-of-
the-evidence standard."  Foster-Miller, Inc., 46 F.3d at 145.
"[T]he preponderance standard necessitates a full-blown
evidentiary hearing at which the court will adjudicate the
jurisdictional issue definitively before the case reaches
trial."  Id. at 146.  In the case at bar, use of the more
stringent preponderance standard is inappropriate because the
record is neither rife with contradictions nor do plaintiffs
submit any patently incredible affidavits.  Richard Kalika is
also proceeding pro se.

Courts additionally recognize a third, intermediate standard "between requiring only a *prima facie* showing and requiring proof by a preponderance of the evidence." Boit, 967 F.2d at 677. "Thus, even though allowing an evidentiary hearing and weighing evidence to make findings, the court may merely find whether the plaintiff has shown a likelihood of the existence of each fact necessary to support personal jurisdiction." Id. This method, however, should only be applied in:

> the special circumstance in which the assertion of jurisdiction is bound up with the claim on the merits, the possibility of preclusion renders use of the preponderance standard troubling, while the possibility of permitting a dubious case to proceed beyond the pleading stage, and even to trial, though the court eventually will be found to lack jurisdiction, renders use of the prima facie standard undesirable.

Foster-Miller, Inc., 46 F.3d at 146. Here, the assertion of jurisdiction is not bound up with the claim on the merits. Accordingly, this court will apply the prima facie standard to the remaining Rule 12(b)(2) motion brought by PSNH and Snow.[1]

B.  Rule 12(b)(6) Motions to Dismiss

The standard of review for a Rule 12(b)(6) motion is well established. To survive a Rule 12(b)(6) motion to dismiss, the complaint must include factual allegations that, when taken as

---

[1] As previously noted, the parties agreed to dismiss Cairns and Irving.

true, demonstrate a plausible claim to relief even if actual proof of the facts is improbable.  See Bell Atlantic v. Twombly, 550 U.S. 555-558 (2007).  Thus, although "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted); accord Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016); Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011).  "[A]ccepting as true all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," Boroian, 616 F.3d at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'"  Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010); Gargano v. Liberty International Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (court "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff"). Legal conclusions in the amended complaint are not included in the Rule 12(b)(6) record.  See Dixon v. Shamrock Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008) (accepting "well-pleaded facts as true, but reject[ing] 'unsupported conclusions or interpretations of law'" in reviewing Rule 12(b)(6) dismissal); see, e.g., Soto-Torres v. Fraticelli,  654 F.3d 153, 157 n.2 (1st Cir. 2011) ("complaint's allegations that Soto-Torres was

'illegally and unreasonabl[y] detained' and that 'excessive force' was used in pushing him to the floor are legal conclusions that are not to be credited").

Facts are confined to those in the amended complaint supplemented by matters of public record, documents incorporated by reference, and facts susceptible to judicial notice. Here, the amended complaint refers to the settlement agreement (Docket Entry # 8, ¶ 68), which is material to plaintiffs' claim and therefore part of the Rule 12(b)(6) record. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (court may consider "'official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint'") (ellipses and internal brackets omitted); Giragosian v. Ryan, 547 F.3d 59, 65-66 (1st Cir. 2008) (can consider documents relied on in complaint, public records, and other documents subject to judicial notice). The settlement agreement is also part of an exhibit attached to the amended complaint and therefore part of the amended complaint. See Fed. R. Civ. P. 10(c).

It is also appropriate to take judicial notice of the state court filings in the various state court proceedings. See Bluetarp Financial, Inc. v. Matrix Const. Co., Inc., 709 F.3d 72, 78 n.4 (1st Cir. 2013) (taking "judicial notice that neither the South Carolina state-court case or the Maine state-court

case has gone to final judgment"); Ezra Charitable Trust v. Tyco Intern., Ltd., 466 F.3d 1, 9 n.7 (1st Cir. 2006) (taking "judicial notice of the SEC's 2006 complaint against Tyco" filed in district court, "the subsequent consent decree, and the final judgment").  Moreover, plaintiffs do not challenge the authenticity of the state court filings the B&M defendants attach to their memoranda and they provide an authenticating affidavit.

"Exhibits attached to the complaint are" also "properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)."  Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Fed. R. Civ. P. 10(c). In the case at bar, there are 39 exhibits attached to the amended complaint.  These exhibits include several deeds; New Hampshire state court orders; a railroad police report; an affidavit by Roger Bergeron; a deposition of Snow; the crossing order including the settlement agreement; and a letter to B&M and New Hampshire Department of Transportation about the crossing.  Accordingly, these exhibits are part of the Rule 12(b)(6) record.

Viewing the facts in plaintiffs' favor and liberally construing the amended complaint in light of Richard Kalika's pro se status, the facts are as follows.  Recitations of the various cases in the complaint are not set out to show legal

arguments or conclusions but, rather, to show the factual allegations regarding the positions taken by the parties for purposes of collateral estoppel.

## FACTUAL BACKGROUND

The record reveals a lengthy dispute between the parties involving railroad crossing rights on property in Merrimack, New Hampshire owned by Kalika. In or around 2005, Kalika sued B&M in New Hampshire Superior Court (Hillsborough County, Southern District) in order to obtain the right to use the crossing to build and operate a sports complex on its property. (Docket Entry # 8, ¶ 63). The trial court ordered that a crossing be provided, but not for a sports complex.[2] (Docket Entry # 8, p. 13). Kalika appealed the decision regarding the use restriction and B&M cross-appealed. (Docket Entry # 8, p. 13). The New Hampshire Supreme Court remanded the case to the trial court, which determined on remand that "B&M was to provide a crossing," but "Kalika's proposed use was an unsanctioned enlargement of the deed." (Docket Entry # 8, ¶ 66).

In September 2010, B&M and Kalika agreed to a conditional settlement embodied in the aforementioned settlement agreement.

---

[2] "The court ruled that [the] use of the crossing created by the deed was restricted to what would have been a typical use of the property back in 1841 - farming and residential access" - "which did not include sports complexes." (Docket Entry # 8, p. 13).

Richard Kalika signed the agreement on behalf of Kalika.  The
settlement agreement requires:  B&M to construct the crossing in
45 days in accordance with certain parameters; and Kalika and
B&M to provide releases and "execute Docket Markings terminating
the litigation" in New Hampshire state court and before the New
Hampshire Board of Transportation.  (Docket Entry 42-2, pp. 6-
11) (Docket Entry # 8-16).  More specifically, section 1(b) of
the settlement agreement states that:  "Kalika and the Railroad[3]
shall provide releases of any claims, actions or causes of
action which either party may have against the other related to
the crossing . . ."  (Docket Entry ## 8-16, 42-2).

On November 30, 2010, Cairns, on behalf of B&M, sent a
letter to Kalika "by U.S. Mail" stating that, "B&M had completed
the Kalika crossing in accordance with the requirements outlined
in the Conditional Settlement Agreement" and demanding that
Kalika sign a revised release.  (Docket Entry # 8, ¶ 74).  After
this first letter went unanswered, Cairns sent a second letter
on December 7, 2010 ("the December letter") again representing
that B&M had carried out its obligations to build the crossing
pursuant to the settlement agreement.  (Docket Entry # 8, ¶ 74).
On December 15, 2010, Kalika signed the "releases and Docket
Markings" under the assumption that the crossing had been built

---

[3]  The settlement agreement refers to B&M as "the Railroad."
(Docket Entry # 8-16).

per the terms of the settlement agreement.  (Docket Entry # 8, ¶ 74).  The amended complaint alleges that the "Cairns/B&M letters were purposeful misrepresentations made to extract signatures on documents that Kalika had been unwilling to sign."  (Docket Entry # 8, ¶ 75).  The amended complaint further states that, "B&M had in fact constructed the crossing at the direction of Pan Am Railways."  (Docket Entry # 8, ¶ 83).

The mutual general release signed by Kalika and B&M on December 15, 2010 extended to "all unknown, undisclosed, unforeseen" and unanticipated injuries, harms, damages and liability.  (Docket Entry # 42-2).  Kalika thereby agreed to release B&M as well as its officers, employees, and related entities from all causes of actions, suits, and "all other liabilities . . . asserted or unasserted, known or unknown" that Kalika or its owners "now have or hereafter" may have "by reason of any matter" arising out of the litigation.  (Docket Entry # 42-2).

In 2011, Richard Kalika altered the crossing.  (Docket Entry # 8, ¶¶ 84-85).  In response, B&M and PSNH[4] filed an action

---

[4]  "PSNH remov[ed] itself [from] the suit as part of [a] mediated settlement agreement."  (Docket Entry # 8, ¶ 87).  A release signed on April 24, 2012 by plaintiffs and PSNH states:

  Kalika, LLC, by its Managing Member, Richard L. Kalika, and
  Richard L. Kalika, individually, . . . do hereby for
  themselves and for their successors and assigns, release

against Richard Kalika and Kalika in July 2011 ("the July 2011 lawsuit") in New Hampshire Superior Court (Hillsborough County, Southern District).  (Docket Entry # 8, ¶ 87) (Docket Entry # 42-4).  Plaintiffs filed several motions which included:  (1) a motion to stay that alleged "B&M ha[d] fraudulently and purposefully obstructed Kalika from the justice it sought" (Docket Entry # 40-3, p. 11); (2) a motion to reconsider the denial of the stay (Docket Entry # 40-6); and (3) a motion to vacate and strike the releases (Docket Entry # 40-9).  The third motion asserted that the releases "were obtained under fraudulent representations of fact, with [the] intention to induce Kalika, LLC into signing" these documents.  (Docket Entry # 40-9).  Plaintiffs' motion to vacate and strike specifically alleged that in the December letter Cairns, representing his client B&M, made false representations regarding B&M's

---

and forever discharge [PSNH] . . . and its employees . . . from any and all claims, counterclaims, actions, causes of actions, demands, rights, damages, costs, losses, expenses and compensation whatsoever, which the undersigned has asserted *or which may or could hereafter be asserted* by the undersigned against or involving PSNH allegedly resulting or to result from any and all acts, occurrences, matters or events which are the subject of [this lawsuit], including but not limited to the alleged alteration of a railroad crossing . . ..

(Docket Entry # 47-3, p. 6) (emphasis added).  The release therefore encompassed future claims that "could hereafter be asserted."  (Docket Entry # 47-3, p. 6).

performance in order to induce Kalika to execute the releases. (Docket Entry # 40-9). The motion identified the representations as false because, inter alia, certain posts and fencing were on Kalika's land, as opposed to B&M's land, and the width of the crossing was too narrow. (Docket Entry # 40-9). Plaintiffs raised a similar argument in a March 2012 opposition to B&M's February 2012 summary judgment motion. (Docket Entry # 40-12). The trial court denied each of plaintiffs' motions and, in September 2012, allowed B&M's summary judgment motion. (Docket Entry ## 8, 40-5, 40-8, 40-11, 40-13).

The trial court's decision allowing B&M's motion for summary judgment recounted the settlement agreement and the parties' litigation. The trial court also summarized plaintiffs' argument "that the crossing was not built to the specifications in the conditional [settlement] agreement with B&M" and rejected it because:

> When Kalika signed and recorded all applicable documents and stipulations for dismissal on December 15, 201[0], it represented that the conditions of the agreement between B&M and Kalika ha[d] been met. By doing so, Kalika waived its right to challenge the suitability of the crossing.

(Docket Entry # 40-13, p. 7). In allowing B&M's summary judgment motion and denying plaintiff's motion to vacate and strike as well as plaintiffs' motion to stay, the trial court necessarily rejected plaintiffs' argument that B&M fraudulently

induced Kalika to sign the releases with the misrepresentations in the December letter. The trial court also deemed plaintiff's motion to compel and reopen discovery moot. Plaintiffs appealed and the New Hampshire Supreme Court, after reviewing the record, the trial court's "well-reasoned order," and plaintiffs' arguments, affirmed the trial court's ruling on the merits. (Docket Entry # 40-14).

In the years following the New Hampshire Supreme Court's decision, plaintiffs instituted a number of administrative actions to address the alleged deficiencies in the crossing. (Docket Entry # 8, pp. 25-26). In December 2013, Kalika filed an action in New Hampshire Superior Court (Hillsborough County, Southern District) against B&M and Cairns ("the December 2013 lawsuit"). (Docket Entry # 40-15). In the complaint, Kalika recounted the September 2010 settlement as well as the state court and administrative actions leading to the settlement. The complaint alleged that, "B&M and/or Cairns committed theft by deception" and "extortion" and that the December letter misrepresented that B&M had carried out its obligations. (Docket Entry # 40-15, p. 5). More specifically, the complaint asserted that B&M "extorted the releases from Kalika" and that Kalika, relying on the false representation that B&M had met its obligations, signed the releases. (Docket Entry # 40-15, pp. 35, 42-43). The trial court granted B&M and Cairns' motion to

dismiss in May 2014 stating that, "The court does not intend to expend further judicial resources by setting forth the often litigated background of this case."[5]  (Docket Entry # 40-17).  The New Hampshire Supreme Court denied Kalika's appeal.  (Docket Entry # 40-18); Kalika, LLC v. Boston & Maine Corp., Civil Action No. 2014-0452, 2015 WL 11071321, at *1 (N.H. Aug. 10, 2015).

DISCUSSION

A.  Personal Jurisdiction

PSNH and Snow assert that this court lacks personal jurisdiction over them and that they should therefore be dismissed from suit pursuant to Rule 12(b)(2).  They submit that plaintiffs fail to establish that they had the requisite minimum contacts to Massachusetts.  PSNH argues that, because it does business exclusively in New Hampshire and does not own property in Massachusetts, plaintiffs cannot establish personal jurisdiction in Massachusetts.  (Docket Entry # 47, p. 8).  Snow argues that plaintiffs fail to allege any facts that show a

---

[5]  The trial court succinctly summarized the complaint as alleging that:  (1) Cairns fraudulently misrepresented in the December letter that B&M carried "out all of its obligations to construct the crossing . . . ; and (2) Kalika relied on this misrepresentation when it signed stipulations on December 15, 201[0] for dismissal of any pending cases against [B&M]."  (Docket Entry # 40-17).

"nexus" or "ties whatsoever to Massachusetts" and, as a New Hampshire resident, "his sole relation to this action is as an employee of PSNH," which does not provide the necessary ties needed for personal jurisdiction in Massachusetts. (Docket Entry # 47, p. 8).

Plaintiffs maintain this court has personal jurisdiction over all defendants because the case involves a RICO conspiracy, which provides this court with "jurisdiction over all participants in the conspiracy, not merely those within the borders of the state." (Docket Entry # 53, p. 4). Plaintiff submits that RICO allows for personal jurisdiction over all defendants as long as plaintiffs can show at least one defendant resides in Massachusetts and "if 'the ends of justice require.'" (Docket Entry # 53, pp. 4-5).

Plaintiffs bear the burden to establish personal jurisdiction. See Negron-Torres v. Verizon Communications, Inc., 478 F.3d 19, 24 (1st Cir. 2007) (plaintiff bears "burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution") (internal quotation marks omitted). Inasmuch as plaintiffs do not address the nexus and ties of PSNH and Snow to Massachusetts, they fail in their burden to show

personal jurisdiction except insofar as they succeed based on their RICO "ends of justice" argument.

RICO includes a number of subsections that govern personal jurisdiction. As construed by this court, Count Nine sets out a civil RICO cause of action under section 1964(c). Section 1965 of title 18 of the Unites States Code ("section 1965") outlines the requirements for service of process for a civil RICO action. A recent decision from this district provides guidance on section 1965:

> The first section, § 1965(a), provides that a RICO action may be brought against "any person" in any district "in which such person resides, is found, has an agent, or transacts his affairs." The second section, § 1965(b), provides that in any civil RICO action "in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned." The third section, § 1965(c), addresses service of subpoenas on witnesses in cases brought by the United States. And the fourth section, § 1965(d), provides that "[a]ll other process . . . may be served on any person in any judicial district in which such person resides . . .."

World Depot Corp. v. Onofri, Civil Action No. 16-12439-FDS, 2017 WL 6003052, at *5 (D. Mass. Dec. 4, 2017). The First Circuit has not yet determined whether section 1965(b) or section 1965(d) controls for nationwide service of process under RICO. Id.

Other circuits use two different ways of interpreting section 1965 in regard to service of process.  Id.  The majority of circuits view section 1965(b) as controlling, meaning "plaintiff must establish that the forum state has personal jurisdiction over at least one defendant and that service of process (and therefore the conferring of personal jurisdiction) over other defendants may occur as 'the ends of justice require.'"  Id.  The Fourth and Eleventh Circuits hold that 1965(d) controls, meaning "personal jurisdiction exists over all defendants if any one defendant has minimum contacts with the United States—the relevant sovereign."  Id. (internal quotation marks omitted).  Following the majority of circuits, see Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1229 (10th Cir. 2006) ("join[ing] the Second, Seventh, and Ninth Circuits and hold[ing] that subsection (b) of § 1965, rather than subsection (d), gives RICO its nationwide jurisdictional reach"); Rolls-Royce Corp. v. Heros, Inc., 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008) ("Second, Seventh, Ninth, and Tenth Circuits have determined that § 1965(b) is the provision that grants nationwide service of process"); World Depot Corp. v. Onofri, 2017 WL 6003052, at *5, this court concludes that section 1965(b) applies and provides personal jurisdiction over all defendants if plaintiffs establish that one defendant has minimum contacts with Massachusetts and that the "ends of

20

justice require" personal jurisdiction over the non-resident defendants.  Id.

The amended complaint and attached exhibits provide evidence of personal jurisdiction over the B&M defendants. (Docket Entry # 8, pp. 3-4).  The amended complaint reflects that B&M's "principal place of business" is "located in Massachusetts" (Docket Entry # 8, ¶ 18) and a "Notice of Choice of Crossing Location and Crossing Right" ("Notice of Crossing") identifies B&M as a "Corporation of Iron Horse Park, North Billerica, Massachusetts" (Docket Entry # 8-36, p. 61). Bergeron is a "recently retired Vice President for B&M," as stated in the amended complaint.  (Docket Entry # 8, ¶ 21).  In a September 2012 notarized affidavit, Bergeron identifies himself as the "Vice President of Special Projects and Industrial Development" for B&M and states he "was directly involved" with the "crossing at issue in this matter."  (Docket Entry # 8-36, p. 18).  In regard to PAR, the amended complaint states that its headquarters is in North Billerica, Massachusetts.  (Docket Entry # 8, ¶ 19).  A copy of a 2011 "Railroad Police" report likewise identifies "Pan Am Railways" with an address at "Iron Horse Park N. Billerica, MA."  (Docket Entry # 8-31).  Burns has a work address at B&M's principal place of business in North Billerica, Massachusetts, according to the amended complaint.  (Docket Entry # 8, ¶¶ 18, 22).  A

filing in one of the New Hampshire Department of Transportation proceedings likewise notes this work address and his position as corporate counsel of PAR. Finally, the B&M defendants do not raise personal jurisdiction as a defense in their motion to dismiss. See Fed. R. Civ. P. 12(b), 12(g), 12(h).

Accordingly, personal jurisdiction exists over the B&M defendants. With personal jurisdiction sufficiently established over the B&M defendants, the issue reduces to whether the "ends of justice require" that PSNH and Snow "be brought before the court." 18 U.S.C. § 1965(b).

Adhering to a flexible application of the "ends of justice," see Cory v. Aztec Steel Bldg., Inc., 468 F.3d 1226, 1232 (10th Cir. 2006), even under this approach, "Plaintiffs' failure to include a showing that an alternative forum does not exist for prosecuting their actions is an important weight against bringing the nonresident Defendants to" this forum.[6] Brown v. Kerkhoff, 504 F. Supp. 2d 464, 496-97 (S.D. Iowa 2007);

---

[6] In contrast to the Tenth Circuit in Cory, the Ninth Circuit interprets the "ends of justice" to require a showing from the plaintiff that there is no district with personal jurisdiction over all the defendants. See Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 539 (9th Cir. 1986). Inasmuch as the United States District Court for the District of New Hampshire appears to have personal jurisdiction over all defendants and subject matter jurisdiction adheres in a federal question case, plaintiffs fail to satisfy the Ninth Circuit's interpretation of the "ends of justice" analysis.

see Crenshaw v. Antokol, 287 F. Supp. 2d 37, 42 (D.D.C. 2003) ("[i]n undertaking the 'ends of justice' analysis, courts consider a variety of factors" including "location of the parties," "judicial economy," and existence of alternative forum).  The fact that New Hampshire provides a forum with personal jurisdiction over all defendants therefore militates against concluding that the ends of justice require that PSNH and Snow "be brought before the court."  18 U.S.C. § 1965(b).

Plaintiffs, who have the burden to establish jurisdiction, point out that, because of the relative proximity of Massachusetts to New Hampshire, it is no greater burden to litigate this matter in Massachusetts than it is to litigate this matter in New Hampshire.  (Docket Entry # 53, p. 5).  While cognizant of this concern, it is not sufficient where, as here, the property at issue is located in New Hampshire and personal jurisdiction exists over all defendants in New Hampshire.  See, e.g., Fitzgerald v. Vogel, Civil Action No. 02-7849, 2003 WL 203562, at *3 (E.D. Pa. Jan. 29, 2003) (rejecting argument that certain "defendants, who live in Atlantic City, will not be inconvenienced by an hour's ride to the federal courthouse in Philadelphia" because judicial economy "is better served in a single action in New Jersey where venue will be proper for all defendants because the CVCA, the property out of which plaintiffs' claims arose, is located there").  In sum, the "ends

23

of justice" do not justify or require bringing the non-resident defendants, PSNH and Snow, before this court under section 1965(b).[7]

B.  Collateral Estoppel

Next, the B&M defendants argue that the doctrine of collateral estoppel bars plaintiffs from bringing this action. They maintain that the issues in this lawsuit have been raised and actually litigated in New Hampshire state court and administrative proceedings.  In response, plaintiffs state that the "conspiracy claims have not been litigated" and that "actions in preventing Kalika from using his[sic] crossing have never been litigated in court."  (Docket Entry # 53, pp. 7-8). Plaintiffs also maintain that collateral estoppel does not apply because the "state court" did not allow them discovery thereby denying them a full and fair opportunity to litigate the issues. (Docket Entry # 53, p. 8).

Collateral estoppel has "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."  See Parklane

_____

[7]  Accordingly, it is not necessary to address the collateral estoppel and other arguments PSNH and Snow make in their motion to dismiss.

Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  The doctrine "bars a party to a prior action, or a person in privity with such party, from relitigating any issue or fact actually litigated and determined in the prior action."  412 S. Broadway Realty, LLC v. Wolters, 169 N.H. 304, 314 (2016) (internal quotation marks omitted).  "[T]he doctrines of res judicata and collateral estoppel have been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end."  Appeal of Town of Goshen, Civil Action No. 2014-0656, 2015 WL 11071569, at *2 (N.H. Aug. 19, 2015) (internal quotation marks omitted).

Where, as here, collateral estoppel involves the application of New Hampshire state court judgments, the preclusive effect of the issues determined in the New Hampshire state courts is determined by applying New Hampshire collateral estoppel law.  See Melendez v. Autogermana, Inc., 622 F.3d 46, 56 (1st Cir. 2010); In re Strangie, 192 F.3d 192, 194 n.2 (1st Cir. 1999) ("[w]hether a federal court is to accord collateral estoppel effect to a state court judgment is controlled by state law"); see also Giroux v. Fed. Nat. Mortg. Assen, 810 F.3d 103, 108 n.3 (1st Cir. 2016) ("'effect of the New Hampshire court's final judgment on Giroux's federal action is determined by applying New Hampshire's res judicata law'") (internal brackets omitted); Sutliffe v. Epping School District, 584 F.3d 314, 326–

27 (1st Cir. 2009). It is also "black letter law that collateral estoppel can apply to preclude the relitigation in federal court of issues previously determined in state court." Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 32 (1st Cir. 1991).

Under New Hampshire state law, a party invoking the doctrine of collateral estoppel must demonstrate the following elements:

> (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment.

Garod v. Steiner Law Office, PLLC, 170 N.H. 1, 5-6 (2017). The issues in the case at bar and, in particular, the remaining count alleging a civil RICO conspiracy under section 1964(c), see 18 U.S.C. § 1962(d), generally involve defendants' intentional interference with Kalika's right to use its property by placing restrictions on the crossing. (Docket Entry # 8, ¶ 2). More specifically, defendants engaged in mail fraud when Cairns sent the December letter, as well as the prior November 2010 letter, to Kalika that led Kalika to sign the releases, including the mutual general release, on December 15, 2010. The December letter allegedly misrepresented that B&M had completed

its obligation to construct the crossing in accordance with the settlement agreement when, in fact, the crossing was too narrow and the gates and fencing were placed on Kalika's property.[8] (Docket Entry # 8, ¶¶ 74-75, 146).

With respect to the first element, the B&M defendants argue that plaintiffs have "sought relief over the same perceived misrepresentations with respect to the Settlement Agreement, and other purported issues arising therefrom" in the previous lawsuits, including the more recent December 2013 lawsuit. (Docket Entry # 40-1, pp. 12-13). In response, plaintiffs submit that their conspiracy allegations in regard to the settlement agreement and the December letter have yet to be litigated in court. (Docket Entry # 53).

Plaintiffs are correct that the section 1964(c) civil RICO conspiracy claim they assert in this action has not yet been litigated. A new legal theory augmented by immaterial changes to factual circumstances, however, cannot be used to argue an issue already decided in the state court. See Steel Hill Dev., Inc. v. Town of Sanbornton, 392 F. Supp. 1134, 1139 (D.N.H. 1974); see also Ramallo Bros. Printing v. El Dia, Inc., 490 F.3d

---

[8] The amended complaint identifies additional ways in which B&M did not comply with the settlement agreement and alleges that defendants engaged in extortion as well as retaliation against a victim.

86, 92 (1st Cir. 2007); <u>Gray v. Kelly</u>, 161 N.H. 160, 167 (2010). By signing the releases, including the mutual general release, plaintiffs agreed to B&M's compliance and construction of the crossing at that time, which was a crossing purportedly less-than 24 feet wide with fencing and gates purportedly not located on B&M's property.[9] As explained below, the trial court's order allowing B&M summary judgment determined that, by signing the documents on December 15, 2015, Kalika represented that the conditions at the time satisfied the settlement agreement and Kalika thereby "waived its right to challenge the suitability of the crossing." (Docket Entry # 40-13, p. 7).

In the July 2011 lawsuit, plaintiffs raised the allegations of the fraudulent misrepresentations in the December letter in the motion to vacate and strike as well as in opposition to B&M's summary judgment motion. (Docket Entry ## 40-9, 40-12). The trial court rejected the argument and allowed B&M's summary judgment motion. (Docket Entry ## 8, 8-36, 40-13). In the December 2013 lawsuit, Kalika raised the issue of fraudulent misrepresentations in regard to the December letter and the trial court granted the motion to dismiss in favor of defendants. (Docket Entry # 40-17). The July 2011 lawsuit and

---

[9] Plaintiffs' argument that the changes to the crossing regarding the width, gates, and fencing (Docket Entry # 53, p. 8) amount to the same issue.

the December 2013 lawsuit sufficiently establish the identicality of the issues that plaintiffs seek to relitigate in this action.

Turning to the second element, in March 2012, plaintiffs filed the opposition to B&M's summary judgment motion in the July 2011 lawsuit. (Docket Entry # 40-12). Plaintiffs argued that Kalika signed the December 15, 2015 releases only because it relied on the false representation in the December 7, 2010 letter that B&M had carried out its obligation to construct the crossing as provided in the September 2010 settlement agreement.[10] (Docket Entry # 40-12, pp. 5-8). Plaintiffs raised a similar argument in their motion to vacate and strike, which the trial court denied in April 2012. (Docket Entry ## 40-9, 40-11). Furthermore, in the motion to vacate and strike as well as in the motion to stay, plaintiffs argued that the gates and fencing were on the property and the width of the crossing was less than 24 feet wide. The trial court denied both motions.[11] In September 2012, the trial court issued the opinion allowing B&M's summary judgment motion. (Docket Entry # 40-13). The opinion again rejected plaintiffs' argument regarding the false representations in the December letter on the merits and

---

[10] Plaintiffs also state that the settlement agreement was attached to an October 2010 order by the New Hampshire Department of Transportation. (Docket Entry # 40-12, p. 6).
[11] See footnote nine.

necessarily determined that, "[w]hen Kalika signed" the December
15, 2015 documents, "it represented that the conditions of the
agreement between B&M and Kalika had been met" and thereby
"waived its right to challenge the suitability of the crossing."
(Docket Entry # 40-13, p. 7).  The New Hampshire Supreme Court
affirmed the trial court's well-reasoned decision, which
included the above finding that Kalika signed the releases and
thus represented that B&M had met its obligations under the
settlement agreement.  (Docket Entry ## 40-13, 40-14).
Accordingly, the trial court in the July 2011 lawsuit resolved
the issues "finally on the merits," Garod, 170 N.H. at 5,
thereby satisfying the second element.

Addressing the third and fourth elements, Richard Kalika
and Kalika, as the parties "to be estopped," id. at 5, were
defendants in the July 2011 lawsuit.  They also had a full and
fair opportunity to litigate the purportedly false
representations in the December letter that B&M had met its
obligations to construct the crossing in accordance with the
settlement agreement.  Indeed, plaintiffs presented the issue in
their motion to vacate and to strike, their motion to stay, and
in their opposition to B&M's summary judgment motion.  (Docket
Entry ## 40-9, 40-12, 42-5).  Although plaintiffs argue that the
trial court denied them discovery (Docket Entry # 53), the
amended complaint recounts discovery insofar as it describes

30

Snow's deposition and plaintiffs sought to *reopen* discovery, albeit unsuccessfully, in the July 2011 lawsuit. (Docket Entry # 8, ¶ 89) (Docket Entry # 40-13, p. 3).

Turning to the fifth element, the trial court's finding was essential to the order allowing B&M summary judgment in the July 2011 lawsuit. B&M sought rulings ordering plaintiffs not to interfere with B&M's and PSNH's crossing rights as well as ordering plaintiffs not to trespass or alter the crossing. (Docket Entry # 40-13, p. 3). Plaintiffs defended Richard Kalika's actions in moving the posts and gates at the crossing on the theory that Kalika signed the releases based on the false representations in the December letter. In arriving at the decision to prohibit plaintiffs from altering the crossing and interfering with B&M's and PSNH's access to the crossing, the trial court explicitly recounted and rejected plaintiffs' argument. (Docket Entry # 40-13, pp. 7, 9). Finally, the New Hampshire Supreme Court reviewed the merits and affirmed the trial court. (Docket Entry # 40-14). Plaintiffs are therefore collaterally estopped from relitigating the same issues in this action against the B&M defendants. Under the doctrine of collateral estoppel, plaintiffs "cannot seek to undo or redo in federal court what has already been done in state court." Keystone Shipping, 109 F.3d at 52.

31

<u>CONCLUSION</u>

In accordance with the foregoing discussion, it is

**RECOMMENDS**[12] that:  the B&M defendants' motion to dismiss with

prejudice (Docket Entry # 40) be **ALLOWED**; PSNH and Snow's motion

to dismiss with prejudice (Docket Entry # 46) be **ALLOWED** as to

the Rule 12(b)(2) lack of personal jurisdiction and rendered

**MOOT** as to the Rule 12(b)(6) failure to state a claim; and that,

in light of the parties' oral agreement to dismiss Cairns and

Irving from this action, that their motion to dismiss (Docket

Entry # 41) be rendered **MOOT.**


<u>/s/ Marianne B. Bowler</u>
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[12] Any objections to this Report and Recommendation must be filed
with the Clerk of Court within 14 days of receipt of the Report
and Recommendation to which objection is made and the basis for
such objection should be included.  <u>See</u> Fed. R. Civ. P. 72(b).
Any party may respond to another party's objections within 14
days after service of the objections.  Failure to file
objections within the specified time waives the right to appeal
the order.